UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
DAYTON DIVISION

| | |
|---|---|
| **ELIZABETH REYNOLDS**<br>c/o Hux Law Firm, LLC<br>3 Severance Circle #18147<br>Cleveland Heights, OH 44118<br><br>    **Plaintiff,**<br><br>  v.<br><br>**ODM RESTAURANT OPERATIONS,<br>LLC DBA OINKADOODLEMOO &<br>BREW**<br>c/o Steven A. Meyer<br>2242 Rosina Drive<br>Miamisburg, OH 45342<br><br>    **Defendant.** | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COMPLAINT FOR DAMAGES AND<br>INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Elizabeth Reynolds, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Plaintiff Reynolds is a resident of the city of Dayton, Ohio, Montgomery County.

2. Defendant ODM Restaurant Operations, LLC dba Oinkadoodlemoo & Brew ("ODM") is a domestic limited liability corporation conducting business at 215 Byers Road Miamisburg, Ohio 45342.

**JURISDICTION AND VENUE**

3. Personal jurisdiction is proper over Defendants pursuant to 28 U.S.C § 1331 in that Reynolds is alleging a federal law claim arising under the Americans with Disabilities Act ("ADA"), and Pregnancy Discrimination Act ("PDA").

4. Venue is properly placed in the United States District Court for the Southern District of Ohio, Dayton Division, because it is the district court for the district, division, and county within which the Defendant operates and conducts business.

5. Prior to instituting this action, Reynolds filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-01093, alleging that Defendant and its agents had harassed and subjected her to disparate treatment because of her pregnancy and disability.

6. Reynolds was mailed her Right to Sue Notice from the EEOC on or about August 9, 2022.

7. A true and accurate copy of Reynolds's Right to Sue Notice is attached as Exhibit 1.

8. Reynolds has properly exhausted her administrative remedies pursuant to 29 U.S.C. § 626(e).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over all other claims in this Complaint because they arise out of the same case or controversy.

## FACTS

11. Reynolds was a former employee and Assistant General Manager of ODM from January 5, 2020, until she was constructively discharged by ODM on September 5, 2022.

12. On or about January 25, 2020, Elizabeth was involved in a severe car accident.

13. Reynolds stayed in the hospital recovering for six days due to the severity of her injuries.

14. On or about February 18, 2020, Reynolds was released back to work with restrictions ("Accident Restrictions").

15. Accident Restrictions included having a break every 4 hours and not lifting the equivalent to a gallon of milk or about 10 pounds.
16. Reynolds notified her boss, Steve Myers, about Accident Restrictions.
17. Steve Myers told Reynolds that he could not accommodate her breaks, which were a portion of Accident Restrictions, but offered no reason for his refusal.
18. Sometime after Steve Myers declined Reynolds accommodations, she discovered she had a high-risk pregnancy.
19. On or about June 11, 2020, Reynolds received additional work restrictions designed to keep herself and her baby safe while at work ("Pregnancy Restrictions").
20. On or about June 12, 2020, Reynolds gave her restrictions to Steve Myers' son, Nick Myers.
21. On or about June 14, 2020, Pregnancy Restrictions were dropped off and made aware to Steve Myers.
22. Despite Steve Myers' awareness of these restrictions, Reynolds was regularly forced to work six days a week and work long hours without a break.
23. On or about August 7, 2020, Reynolds worked 9.5 hours without any break.
24. On or about August 8, 2020, Reynolds woke up and discovered that she had been spotting, which is a sign of serious complications in a high-risk pregnancy.
25. Reynolds told Steve Myers that she was cramping, spotting, and did not feel well.
26. Steve Myers ignored her distress and instead told her to go deliver a catering order.
27. On or about August 9, 2020, Reynolds worked at ODM from open to close.
28. On or about August 10, 2020, Reynolds was admitted to the hospital due to complications with her pregnancy.

29. At the hospital, Reynolds was told that she had a couple veins on her placenta that had ruptured due to stress and being overworked.

30. On or about August 12, 2020, Reynolds was released back to work with restrictions. ("Complication Restrictions").

31. Reynolds Complication Restrictions again called for a reduced workload of 32 hours a week and lifting restrictions of a maximum of 20 pounds.

32. On or about August 14, 2020, Reynolds gave Steve Myers the new restrictions.

33. When the next available schedule was released, ODM had scheduled Reynolds to work for 34 hours

34. Steve Myers told Reynolds that he did not believe there was anything that weighed more than 20 pounds that Reynolds would have to lift.

35. Steve Myers often accused Reynolds of being the reason for her high-risk pregnancy.

36. Steve Myers forced Reynolds to lift rib trays that she reasonably believed weighed more than 20 pounds. Along with inventory kegs that can weigh over 100 pounds.

37. On or about September 5, 2020, after Steve Myers and ODM continued to disregard Reynolds restrictions and put her and her baby at risk, she was constructively discharged.

## COUNT I:

## FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

38. Reynolds restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

39. Defendants had knowledge of Reynolds's disability, related to her injuries sustained in her car accident and pregnancy complications, at all relevant times during her employment.

40. Reynolds's requested accommodations were reasonable.

41. Reynolds's requested accommodations did not present an undue hardship on Defendants in providing those reasonable accommodations.

42. Defendants knew that Reynolds would be able to perform all her essential job functions with reasonable accommodation.

43. Defendants failed to provide reasonable accommodations to Reynolds that would have allowed her to continue to perform her essential job functions as well as alleviated the effects of her disabilities.

44. Defendants failed to engage in the interactive process of determining whether Reynolds needed an accommodation.

45. Defendant's conduct constituted a violation of the ADA.

46. As a direct and proximate result of Defendants' conduct, Reynolds suffered and will continue to suffer damages.

## COUNT II:

## PREGNANCY DISCRIMINATION IN VIOLATION OF PDA

47. Reynolds restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

48. At all times relevant herein, Reynolds was a pregnant female.

49. As a pregnant female, Reynolds is a member of a protected class under Title VII, as amended by the PDA.

50. Defendant was aware of Reynolds's pregnancy.

51. Defendant knowingly and intentionally discriminated against Plaintiff because of her sex and pregnancy.

52. At all relevant times, Reynolds performed the functions of her job competently and was qualified for her position with Defendant.

53. Defendant treated Reynoldsless favorably than her similarly situated non-pregnant counterparts.

54. Defendant discriminated against Reynoldsbecause of her sex and pregnancy, in violation of Title VII, through adverse employment actions carried out by her supervisor(s)

55. Defendant's discriminatory adverse employment actions against Reynolds included continuously refusing to comply with Complication Restrictions and Pregnancy Restrictions.

56. The effect of the practices described above has been to deprive Reynolds of equal employment opportunities, and to otherwise adversely affect her status as an employee because of her sex and pregnancy.

57. Defendant is liable for the acts and omissions of its agents and employees.

58. The sex- and pregnancy-related employment practices and other acts or omissions of Defendant and its agents, supervisors, and employees reflect Defendant's reckless, willful, and wanton indifference or hostility to Reynolds's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Reynolds's attorney's fees in bringing this action.

## **DEMAND FOR RELIEF**

WHEREFORE, Reynolds demands from Defendant the following:

(a) Issue a permanent injunction:

  (i) Requiring Defendant to abolish discrimination, harassment, and retaliation;

  (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

  (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

  (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Reynolds to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Reynolds for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorney's fees and non-taxable costs for Reynolds claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

_____
James J. Hux (0092992)
**HUX LAW FIRM, LLC**
3 Severance Circle #18147
Cleveland Heights, Ohio 44118
Phone: (937) 315-1106
Fax:    (216) 359-7760
Email: jhux@huxlawfirm.com

*Attorney For Plaintiff*

## JURY DEMAND

Plaintiff Elizabeth Reynolds demands a trial by jury by the maximum number of jurors permitted.

                                                                                          _____
                                                                                           James J. Hux (0092992)